## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WES ADAMS, an individual; BEAVER DAM FARMS, LLC, a Nevada limited-liability company, | Case No.: 2:08-cv-01382-RLH-PAL |
| Plaintiffs, | **O R D E R** |
| vs. | (Motion to Dismiss–#15) |
| RICHARDSON DESIGN PARTNERSHIP, LLC, a Utah limited-liability company; NEIL RICHARDSON, an agent of RICHARDSON DESIGN PARTNERSHIP, LLC and in his individual capacity; ROCHESTER & ASSOCIATES, INC., a Georgia domestic profit corporation; DOES I–X, inclusive; and ROE CORPORATIONS 1–10, inclusive, | |
| Defendants. | |

Before the Court is specially appearing Defendants Richardson Design Partnership, LLC, Neil Richardson, and Rochester & Associates, Inc.'s **Joint Motion to Dismiss for Lack of Jurisdiction and Improper Venue** (#15), filed February 11, 2009. The Court has also considered Plaintiffs Wes Adams and Beaver Dam Farms, LLC's Opposition (#18), filed March 25, 2009, and Defendants' Reply (#19), filed April 8, 2009.

1

**BACKGROUND**

Plaintiff Wes Adams is a resident of Clark County, Nevada, and has significant real estate holdings in the United States and abroad. Defendant Neil Richardson is a resident of Salt Lake City, Utah, and the managing member of Defendant Richardson Design Partnership, LLC, ("RDP") a Utah limited-liability company. Adams and Richardson met in 2005 through a mutual business acquaintance. The acquaintance arranged for Richardson to come to Adams's office in Las Vegas to present a business proposal relating to a development project in the Bahamas. Following Richardson's presentation, the two flew to the Bahamas and toured the project together. While Adams eventually declined to go forward with the project, that was not the end of their business dealings.

Following their trip to the Bahamas, Richardson began actively soliciting Adams for work and requesting Adams participation in several real estate projects. Richardson proposed that his company review each of the properties owned by Adams and create a development plan. Adams consented. Richardson flew to Las Vegas, and the two traveled together to Adams's properties in Colorado, Georgia, Mexico, New Mexico, Oklahoma, and Utah. Richardson also flew with Adams to Santa Fe, New Mexico to analyze the potential purchase of another property. Following their trip to Santa Fe, the two returned to Adams's Las Vegas office to discuss what actions they should take with regard to the property. Richardson also flew to Las Vegas several times to discuss a resort property in Mexico that Adams was involved with and to find out how RDP could help with the development. He also traveled to Las Vegas to discuss with Adams potential projects in Oklahoma and Colorado and to offer Adams' company a time-management software system.

Richardson's efforts were at least partially successful. His company performed design work for Adams' properties in Reno, Nevada, and New Harmony, Utah. Richardson had solicited this work on behalf of RDP in Las Vegas, and Richardson attended numerous meetings in Adams's Las Vegas office regarding these projects.

1    Richardson also successfully solicited Adams's involvement in at least two real
2 estate development projects. The first involved a property in Connecticut called Elm Court.
3 Richardson asked Adams to invest $325,000, and promised him that he would not lose any money
4 on the deal. Adams claims he invested based on Richardson's guarantee, but to date, has not
5 received any return on his investment.

6    The second project involved a property Adams owns in Athens, Georgia known as
7 Beaver Dam Farms. Richardson promised Adams that he would secure a $20,000,000 loan to
8 develop the property, with $10,000,000 of that loan being used to pay Adams for the property. In
9 order to begin development, Richardson asked Adams to front $250,000. Richardson promised to
10 pay back this money once he had obtained the loan. Adams agreed to put up the money, but
11 conditioned his participation in the project on Richardson's securing the loan. As with their other
12 ventures, Richardson traveled several times to Las Vegas to meet with Adams concerning this
13 project. Following their agreement, RDP hired Defendant Rochester & Associates, Inc. ("R&A")
14 to perform work on the Georgia property. Richardson, however, never secured the $20,000,000
15 loan and R&A was never paid. Adams claims he never agreed to the work being performed before
16 Richardson obtained the loan. R&A later filed a lien against the property.

17    Adams and his company Beaver Dam Farms, LLC filed this action on October 13,
18 2008, asserting four claims for fraud, breach of contract, breach of the implied covenant of good
19 faith and fair dealing, and tortious interference with prospective contractual relations arising out of
20 the Elm Court and Beaver Dam Farms projects. Defendant Richardson later filed a lawsuit in
21 Georgia based on the Beaver Dam Farms project. Defendants Richardson, RDP, and R&A now
22 appear specially and request to be dismissed for lack of personal jurisdiction under Federal Rule of
23 Civil Procedure 12(b)(2). For the reasons discussed below, this Motion is denied.
24 //
25 //
26 //

## DISCUSSION

### I. Motion to Dismiss

A court may dismiss a complaint for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing that the court has personal jurisdiction over each defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In the absence of an evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction to defeat a 12(b)(2) motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). To make a prima facie showing of jurisdiction, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* The plaintiff's allegations "may not be merely conclusory, but must assert particular jurisdictional facts which establish the necessary ties between the defendant and the forum state." *Pocahontas First Corp. v. Venture Planning Group,* 572 F. Supp. 503, 506 (D. Nev. 1983). Moreover, a court resolves conflicts in the parties' affidavits in favor of the non-moving party. *Holland Am. Line Inc. v. Wärtsilä N. Am.*, 485 F.3d 450, 457 n.5 (9th Cir. 2007). However, for purposes of personal jurisdiction, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

### II. Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over them because they do not have sufficient contacts with Nevada. In addressing this assertion, the Court notes the long-standing rule that in order to establish personal jurisdiction, a plaintiff must show (1) that the forum state's long-arm statute confers jurisdiction over the out-of-state defendant; and (2) that the exercise of jurisdiction does not violate federal constitutional principals of due process. *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent permitted by due process. *Baker v. Eighth Judicial Dist. Court*, 999 P.2d 1020, 1023 (Nev. 2000). Consequently, the analysis regarding Nevada's long-arm statute and federal due process are the same. *See id.*

1   There are two types of personal jurisdiction: general and specific. In order to
2  exercise specific jurisdiction, (1) the defendant must have done some act by which he purposefully
3  avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits
4  and protections of its laws; (2) the claim must arise out of the defendant's forum-related activities;
5  and (3) the exercise of jurisdiction must be reasonable. *See, e.g.*, *Gray & Co. v. Firstenberg Mach.*
6  *Co.*, 913 F.2d 758, 760 (9th Cir. 1990). The plaintiff bears the burden of the satisfying the first two
7  prongs of this test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).
8  If the plaintiff satisfies these two requirements, the burden shifts to the defendants to show that the
9  exercise of personal jurisdiction is unreasonable. *Id.*

10   Here, the Court has little difficulty concluding that it has personal jurisdiction over
11  Defendants Richardson and his company RDP. First, Richardson and RDP purposefully availed
12  themselves of the privilege of conducting business activities in Nevada when Richardson traveled
13  to Las Vegas several times to solicit business from Adams. In their Opposition, Plaintiffs submit
14  the affidavit of Wes Adams, in which he states that Richardson traveled to his Las Vegas office on
15  at least forty separate occasions to solicit work for RDP with regards to Adams's properties and to
16  offer to install and administer a software system. Second, Plaintiffs' claims arise out of two deals
17  that were arranged, at least in part, at Adams's Las Vegas office. Finally, Richardson and RDP
18  have not submitted any evidence to convince the Court that the exercise of personal jurisdiction
19  over them would be unreasonable. Accordingly, the Court denies Defendants' Motion with respect
20  to Richardson and RDP.

21   With regards to Defendant R&A, however, the Court is concerned about the
22  appropriateness of exercising personal jurisdiction over a party that appears to have little to no
23  contacts with Nevada. Nevertheless, the Court also has several questions about the extent of the
24  relationship between R&A, Richardson, and RDP that it cannot answer on the record before it. The
25  Court therefore declines to make a definitive ruling as to R&A in order to give the Plaintiffs an
26  opportunity, through discovery, to present evidence regarding R&A's jurisdictional ties to Nevada.

Consequently, the Court denies without prejudice Defendants' Motion with respect to R&A. Defendant R&A may refile its motion after Plaintiffs are afforded an opportunity to conduct discovery on this jurisdictional issue.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants Motion to Dismiss (#15) is DENIED.

Dated: June 29, 2009.

_____
ROGER L. HUNT
Chief United States District Judge

6